Cauuthees, J.,
delivered the opinion of the Court.
This was an action hy warrant, to recover from Smith & Lackey the penalty of ten dollars, for the violation of the following city ordinance:
“ Be it ordained, That from and after the 1st of April, 1855, all houses kept for the retailing of spirituous liquors, shall he closed at 9 o’clock P. M., and all sales of liquors after that hour in such’house, shall he deemed unlawful; and any person violating this ordinance, shall he subject to a fine of ten dollars for each and every such offence.”
The case is rather imperfectly made out in the hill of exceptions, upon the facts, hut the circumstances proved are sufficient to make out the charge in the warrant. The deputy marshal proves that, after 9 o’clock, he went into the “ saloon of defendants,” saw a man drinking at the “ bar,” and one of the defendants “ handed liquor to the person drinking,” though he saw no money paid; the front door was closed, but not locked; the town clock had, just before he entered, struck nine. It is proved then, that the defendants occupied a saloon, had a bar in it, and handed out liquors for persons to drink. Erom these facts unexplained, it is difficult to see how any one could doubt that the defendants kept a house “ for the retailing of spirituous liquors,” in the language of the or. dinanee. There is another position taken upon the facts, in reference to the ordinance, as construed by the court. The door was closed as required, and that, it is argued, was a full compliance. On the other side, it is contended that the only sensible construction is, that it means, that not only the door, but the business, must be suspended at the hour designated. This must certainly be so, or the law would be nugatory. But if such were not the proper construction, it would not help the defendants, as the ordinance goes further, and prohibits the sale of liquors after that hour.
*247 But it is presumed that the question intended to he seriously made in this ease, is upon the validity of the ordinance itself.
The objection taken to it is, that the defendants were licensed retailers of spirits, under the act of 1846, and htaving complied with all the provisions of the law, and paid the State and county, and corporation, for the privilege, there is no power in the corporation to abrogate, or even abridge or limit that right to any particular days or hours, as they are entitled to the whole time, and all hours, both in the day and night, to exercise and make profitable the privilege they have purchased with their own money, and for which they hold the license of the State. This is supposed to be a question not entirely free of difficulty; and a very plausible argument has been submitted to us in favor of the position. But it is said on the other side, that in order to raise that ■ question, it must be shown by the defendants that they are licensed tipplers, which they have not done. We take it, that fact sufficiently appears, not by the production of the license, but the circumstances of the case. The ordinance could only have been understood to apply to licensed tipplers, as it could not be presumed that any other houses would be kept in the city for retailing liquors against the general law, or, at least, this regulation could not have been intended to refer to such, for it recognizes the right to sell with open doors at all other hours. It must, then, be taken as admitted by the plaintiffs by the institution of this proceeding under their ordinance, that the defendants were licensed tipplers. Therefore, the point debated, is fairly made by the record.
This is a police regulation, for the good order and quiet of the city. It is literally within the letter of the corporate powers, as set forth in the charter of this, as well, perhaps, as all other towns and cities. It does not follow, because the State has granted a privilege to a citizen, that the exercise of it may not be regulated by the corporate authorities. Ordinances for these purposes have been constantly made and enforced. It is no infringement of the State authority. It is implied that the party licensed is to be subject to the munici *248 pal regulations of the town in which he may exercise his privilege. It is a condition understood, if not expressed. The same power which licensed him to exercise his trade, gave to the incorporated towns the authority to prevent nursanees, and regulate tippling houses.
In the ease of Robinson v. The Mayor and Aldermen of Franklin, 1 Hum., 162, the power is admitted to restrain and regulate licensed tipplers in the exercise of this privilege, “ so as to mitigate the evils of his trade,” though the ordinance in¡ that case was held to be invalid, beeause it prohibited the selling under a heavy penalty without license from the corporation, and this was thought to be inconsistent with the law's of the State.
It is a correct principle, that a corporation can pass no bylaw inconsistent with the constitution and laws of the State. Angel & Ames, 182—188. A by-law must also be reasonable, and not oppressive. Same, and 2 Kent, 296; Mayor and Aldermen of Columbia v. Beasly, 1 Hum., 241. Subject to these restrictions and limitations, the power to make by-laws abides in all municipal corporations, and may be enforced by penalties.
In the ordinance under consideration, we see nothing oppressive or violative of the constitution or laws of the State. The license privilege is not prohibited, but regulated in its exercise by a reasonable and proper restriction.
It must be left to the corporate authorities to determine what restrictions upon this trade are required for the general good ; and unless they are unreasonable or oppressive, they are valid, and will be maintained. No man can be permitted to exercise, or use any of bis rights, to the unnecessary injury of others, and much less whole communities.
We, therefore, consider this a legal and valid ordinance» and affirm the judgment, enforcing the penalty.